I «GANUCHEAU, Judge Pro Tem.
This action arises out of a wrongful death/medical malpractice claim brought by the husband and children of Mrs. Dyann Dumont against the Cardiovascular Institute of the South (CIS) and its employee, Dr. Salem Maaliki. After the trial court rendered judgment in favor of the plaintiffs, the Louisiana Patients’ Compensation Fund intervened in the suit and appears as an appellant. The defendants, Dr. Salem Maaliki, CIS, and the interve-nor, Louisiana Patients’ Compensation Fund, appealed the trial court’s judgment.
There are three issues before the court for determination. We are asked to determine whether the trial court’s decision that Dr. Maaliki was negligent in his treatment of Mrs. Dumont was manifestly erroneous and/or clearly wrong. The second issue is whether the trial court erred in finding that Mrs. Dumont’s death was caused by Dr. Maaliki’s' fault. The third issue for determination is whether the trial court *1232 erred in not allowing Dr. Fitzpatrick to testify regarding the cause of Mrs. Du-mont’s death. Finding no error in the trial court’s judgment, we affirm.

FACTS

This claim arises out of Mrs. Dumont’s visit to CIS on November 15, 1995, three days before her death on November 18, 1995. Prior to her visit, Mrs. Dumont had been experiencing shortness of breath. Because she was unable to get an appointment with her treating physician until November 20th, she went to CIS for treatment. Mrs. Dumont was dropped off at the door and entered the clinic without assistance. She was first assessed by a CIS nurse, who found a |3normal blood pressure, stable pulse and a weight of 255 pounds. Her chief complaint was shortness of breath (dyspnea) on exertion. Dr. Maaliki reviewed the chart and discovered that Mrs. Dumont was a prior patient at CIS. She had past complaints of chest pains, shortness of breath on exertion, sweating, palpitations and weakness. She was also an insulin-dependent diabetic. Dr. Maaliki’s history taken from Mrs. Du-mont revealed that she had shortness of breath on exertion, a dry cough and headaches. She also informed Dr. Maaliki that she had been in the emergency room for hip trouble several weeks earlier. In his examination of Mrs. Dumont, Dr. Maaliki noted that her vital signs were stable and she did not exhibit any swelling in her arms or legs. Mrs. Dumont’s lungs were clear and her heart sounds were normal. She had no signs of shortness of breath at rest. Dr. Maaliki observed that she was obese, but otherwise normal. Dr. Maaliki diagnosed Mrs. Dumont with bronchitis, prescribed an antibiotic and scheduled a follow-up visit for November 21st. Mrs. Dumont left the clinic unassisted. In the days following her visit to CIS, Mrs. Du-mont’s condition worsened until her death on November 18, 1995. At no time prior to her death did she seek further treatment.

DISCUSSION

The burden of proof for a Louisiana medical malpractice action is stated in La. R.S. 9:2794. It provides that in a malpractice action based on the negligence of a physician, the plaintiff shall have the burden of proving: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar | ¿community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.
In other words, in suits alleging medical malpractice, the plaintiff must prove the applicable standard of care, the breach of that standard, and that the substandard care caused an injury that the plaintiff otherwise would not have suffered. The plaintiff need not show that the doctor’s conduct was the only cause of harm, nor must all other possibilities be negated, but the plaintiff must show by a preponderance pf the evidence that she suffered injury because of the doctor’s conduct. The test for determining the causal connection is whether the plaintiff' proved through medical testimony that it is more probable than not that the injuries were caused by the substandard care.
Hoot v. Woman’s Hosp. Foundation, 96-1136 (La.App. 1st Cir.3/27/97), 691 So.2d *1233 786, 789, writ denied, 97-1651 (La.10/3/97), 701 So.2d 209 (citations omitted).
In the case of Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court set forth the standard of appellate review of a trial court’s factual findings. The Court in Rosell noted,
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact IsShould not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable... .The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable [factfinder] would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a [factfinder’s]finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-845 (citations omitted).
After considering the record in its entirety, we conclude that there are no manifest errors in the trial court’s judgment.

The trial court’s finding that Dr. Maaliki was negligent

Mrs. Dumont died of a pulmonary embolism. The plaintiffs argue that under the facts available to Dr. Maaliki at the time he saw Mrs. Dumont, he should have suspected the possibility of a pulmonary embolism. Thereafter, knowing that pulmonary emboli are | filife-threatening, Dr. Maaliki should have performed subsequent testing to either exclude or diagnose the condition. This failure resulted in Dr. Maaliki’s breach of the standard of care.
The testimony at trial established that Mrs. Dumont was an obese, insulin-dependent diabetic who had previously suffered incidents of shortness of breath. Dr. Maa-liki’s history and examination of Mrs. Du-mont revealed that she was complaining of shortness of breath on exertion, headaches and a dry cough. Her lungs were clear and she had no apparent heart problems. The shortness of breath that Mrs. Dumont experienced on previous occasions was not the same as she experienced on the date of her visit to CIS. It was the opinion of Dr. Tepper, plaintiffs’ expert, that further testing was necessary and that Dr. Maaliki’s treatment fell below the standard of care.
The plaintiffs in this matter, Mrs. Du-mont’s husband and children, testified at the trial. They testified that prior to her visit to CIS, Mrs. Dumont was experiencing severe shortness of breath, could only *1234 walk slowly and would have to stop and catch her breath every 10-15 feet. Although she had made an appointment with her treating physician, her symptoms were severe enough to warrant a visit to CIS before the date of her appointment with her physician. They further testified that Mrs. Dumont’s exam was very brief, lasting approximately fifteen minutes.
The trial court rendered judgment without assigning written reasons. At the hearing on the motion for a new trial, the trial judge indicated that, after considering the credibility of the witnesses, he found the plaintiffs to be credible. He felt that Dr. Maaliki had not |7accurately diagnosed Mrs. Dumont’s condition because the doctor had not taken enough time to adequately do so. The trial court went on to state that, based on the factual history, the court accepted the medical testimony presented by the plaintiffs over the defendants’ medical testimony. After reviewing the record in its entirety, we find that the trial court’s decision that Dr. Maaliki was negligent is supported by the evidence introduced at trial. We find no manifest errors in the trial court’s determination.

The trial court’s finding that Mrs. Du-mont’s death ivas caused by Dr. Maaliki’s negligence

As stated above, the plaintiffs must prove that, as a proximate result of the lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred. La. R.S. 9:2794 A(3). The test for determining the causal connection is whether the plaintiff proved through medical testimony that it is more probable than not that the injuries were caused by the substandard care. Hoot v. Woman’s Hosp. Foundation, 691 So.2d at 789.
Plaintiffs’ expert, Dr. Tepper, testified regarding causation and the process by which pulmonary emboli affect the body. It was his opinion that because Mrs. Du-mont’s legs had not yet begun to swell when Dr. Maaliki saw her, if she had been given the blood thinner, Heparin, or other anticoagulants, her chance of survival would have been excellent. The substance of Dr. Tepper’s testimony, when reviewed as a whole, is that if Dr. Maaliki had taken time to evaluate Mrs. Dumont’s condition, he would have suspected the possibility that |sMrs. Dumont was suffering from a pulmonary embolism and would have conducted further tests. It is more probable than not that, as a result of these tests, he would have discovered the embolism, and could have treated it to ensure Mrs. Du-mont’s survival. We find that the plaintiffs have borne their burden as defined in La. R.S. 9:2794 and specifically, that the plaintiffs have proven causation. Dr. Maaliki’s failure to suspect the possibility of a pulmonary embolism and to treat it accordingly was the proximate cause of Mrs. Dumont’s death.

The trial court’s limiting of Dr. Fitzpatrick’s testimony to the autopsy report

Dr. Feaster Fitzpatrick was the pathologist who performed the autopsy on Mrs. Dumont. At the trial, the court limited his testimony to the contents of the autopsy report. He was only allowed to explain the significance of his findings in a proffer. We do not find any error in this limitation of testimony. Although the witness list was due 21 days prior to the trial, defendants filed theirs one and one-half days before trial, listing Dr. Fitzpatrick as a witness. The witness list referred plaintiffs to the doctor’s autopsy report. At no time did defendants list Dr. Fitzpatrick as an expert. The plaintiffs had no disagreement with the autopsy report as prepared by Dr. Fitzpatrick and determined that an expert in the field of pathology was not needed at trial.
The autopsy report indicates that Dr. Fitzpatrick found that the cause of Mrs. Dumont’s death was a massive pulmonary embolus. In his internal examination, the report states that a sectioning of the |flIungs revealed numerous organized blood clots obstructing the pulmonary artery *1235 branches. Dr. Fitzpatrick testified that he had no independent recollection of the autopsy and did not have any physical evidence of the autopsy to review. We do not find that the trial court abused its discretion in limiting the doctor’s testimony to the findings in the report. Any additional testimony could only have been conjecture.
The court did allow Dr. Fitzpatrick to explain the significance of his findings in a proffer. We note that although the remainder of the doctor’s testimony was proffered, the trial court heard the balance of the testimony and failed to find the evidence trustworthy. The trial court noted that there was no foundation for Dr. Fitzpatrick’s testimony regarding the significance of the report, as he had no independent recollection of it and had no evidence to review.
For the reasons above, the trial court’s judgment in favor of the plaintiffs is affirmed.
AFFIRMED.