790 So.2d 75 (2001)
Edward LeBLANC, Plaintiff/Appellee,
v.
Dr. Richard BARRY, M.D. Louisiana Patient's Compensation Fund, Defendant/Appellant.
No. 00-709.
Court of Appeal of Louisiana, Third Circuit.
February 28, 2001.
Writ Denied June 15, 2001.
*77 John L. Hammons, Shreveport, LA, Counsel for Plaintiff/Appellee.
Henry D. Salassi, Jr., Keith C. Armstrong, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of DOUCET, Chief Judge, PETERS, and AMY, Judges.
DOUCET, Chief Judge.
The Patient's Compensation Fund (PCF) appeals the trial court's judgment in this medical malpractice action.
Dr. Richard Barry was Mrs. Odessa LeBlanc's primary care physician for over 17 years. Although he is a gynecologist, it is undisputed that he chose to become Mrs. LeBlanc's primary care physician. Mrs. LeBlanc died on March 4, 1994 of pulmonary fibrosis and kidney failure.
Her husband made a claim for medical malpractice. He submitted the matter to a medical review panel. The panel in its opinion stated that:
The evidence supports the conclusion that the defendant, Dr. Richard Barry, failed to comply with the appropriate standard of care as charged in the complaint, however the conduct complained of was not a factor of the resultant damages or the conduct complained of cannot be determined to be a factor of the resultant damages by this panel.
In its reasons, the panel explained that: "whether the disease process would have been treatable or not, or would have resulted in the patient's demise is impossible for this panel to determine. As a result of this dilemma, we cannot make a causal connection between the deviation and the eventual demise of the patient."
Mr. LeBlanc brought this suit alleging that Dr. Barry breached appropriate medical standards in the treatment of his wife, with the result that he failed to diagnose and treat her progressively worsening pulmonary fibrosis and kidney disease. After a trial on the merits, the trial court rendered judgment in favor of the Plaintiff, finding that:

*78 [T]he Court finds that the plaintiff has carried his burden of proving not only that Dr. Barry deviated from applicable medical standards but also that his medical negligence was a substantial contributing cause to Mrs. LeBlanc's death, hospitalization, and general damages including physical pain and suffering, mental anguish and distress, fear of death, disability, and inconvenience. This Court further finds that Mrs. LeBlanc's hospitalization at Lake Charles Memorial Hospital from December 21, 1993, through March 4, 1994, and the medical expenses related thereto, were directly caused by the medical malpractice of the defendant.
The trial court awarded damages to Edward LeBlanc for wrongful death and survival in the amount of $500,000.00 plus past medical expenses of $519,719.35. Further, the court limited the portion of the judgment owed by Dr. Barry to $100,000.00 pursuant to the Louisiana Medical Malpractice Act, leaving the balance of the judgment to be paid by the PCF. The PCF appeals.

MOTION TO DISMISS APPEAL
The Plaintiff has moved to dismiss the PCF's appeal. This court has already dealt with the Plaintiff's argument in this regard:
The statute and jurisprudence clearly contemplate that the PCF has an interest in the appellate process. See R.S. 40:1299.44(c)(6). In order for this interest to be meaningful, the PCF must receive notice of the judgment to trigger their appeal delays. In the present case the PCF did not receive Notice of Judgment by the clerk's office, and did not receive notice until the plaintiff's counsel sent the certified copy of the judgment pursuant to R.S. 40:1299.44(B)(7)(b) on April 26, 2000. Within two weeks the PCF obtained a motion and order for suspensive appeal. We find under these circumstances the motion for suspensive appeal was filed timely.
LeBlanc v. Barry, 00-709, p. 7 (La.App. 3 Cir. 8/30/00); 771 So.2d 696, 700, writ denied, 00-2638 (La.11/17/00); 774 So.2d 977.
This finding is the law of the case. Accordingly, the appeal will be maintained.

CAUSAL CONNECTION
The Appellant first argues that the Plaintiff failed to carry his burden of showing that Dr. Barry's breach of the standard of care resulted in Mrs. LeBlanc's death.
The burden of proof for a Louisiana medical malpractice action is stated in La. R.S. 9:2794. It provides that in a malpractice action based on the negligence of a physician, the plaintiff shall have the burden of proving: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.
In other words, in suits alleging medical malpractice, the plaintiff must *79 prove the applicable standard of care, the breach of that standard, and that the substandard care caused an injury that the plaintiff otherwise would not have suffered. The plaintiff need not show that the doctor's conduct was the only cause of harm, nor must all other possibilities be negated, but the plaintiff must show by a preponderance of the evidence that she suffered injury because of the doctor's conduct. The test for determining the causal connection is whether the plaintiff proved through medical testimony that it is more probable than not that the injuries were caused by the substandard care.

Hoot v. Woman's Hosp. Foundation, 96-1136 (La.App. 1st Cir.3/27/97), 691 So.2d 786, 789, writ denied, 97-1651 (La.10/3/97), 701 So.2d 209 (citations omitted).
Dumont v. Maaliki, 99-1850, p. 4 (La.App. 1 Cir. 9/22/00); 769 So.2d 1230, 1232-33.
It is undisputed that Dr. Barry failed to exercise the applicable standard of care. However, we must determine whether the trial court correctly found that the breach of the standard of care was a cause in fact of Mrs. LeBlanc's death.
Lorraine Thomas, the LeBlanc's granddaughter, testified that she visited her grandmother daily during the last four of five years of her life. She stated that she saw a drastic drop in her grandmother's weight and that from 1990 on her grandmother had a progressively worsening dry hacking cough. She stated that her grandmother complained of fatigue and had chest pain. Ms. Thomas testified that Dr. Barry had given her grandmother cough syrup for the cough but nothing more.
The medical experts agreed that Dr. Barry's care of Mrs. LeBlanc was inadequate and that he deviated from the standard of care. Dr. Samuel F. Burke was a member of the medical review panel and testified via deposition. He testified that a patient complaining of persistent shortness of breath, fatigue, dry cough, weight loss and dispnea on exertion should have a thorough physical examination including blood tests, a chest x-ray and an EKG and should possibly be referred to a pulmonary specialist or internist. Dr. Burke stated that there was no evidence in Dr. Barry's records that this had been done at any time during his care of Mrs. LeBlanc. He explained that it was possible that, had Mrs. LeBlanc been examined to determine the reason for her sudden unexplained weight loss, the pulmonary fibrosis would have been identified. He opined that he did not think that he, as a gynecologist, could diagnose or treat pulmonary fibrosis. However, if he felt something was wrong with the patient he would get another doctor involved. Dr. Burke explained that to fail to do so might hasten the patient's death.
Dr. Sheldon Kottle, an internist and nephrologist, testified as an expert on behalf of the Plaintiff. He opined that Dr. Barry's deviation from the standard of care resulted in harm to Mrs. LeBlanc. It was his opinion that Dr. Barry's failure to follow up on patient complaints or to refer her to a specialist resulted in a failure to diagnose kidney disease and pulmonary fibrosis which resulted in unnecessary suffering and an untimely death for Mrs. LeBlanc. He explained that pulmonary fibrosis is a fibrotic disease of the lungs. The lungs become brittle and scarred so that they do not expand and contract. Dr. Kottle further explained that the finding on Mrs. LeBlanc's death certificate of end stage pulmonary fibrosis meant that the disease had progressed to the point that the lungs could no longer support life. He stated that the disease is chronic and *80 runs a protracted course. He further explained that there are multiple catalysts for pulmonary fibrosis including certain medications and drugs, toxins, bacteria and viruses, fungi, asbestos exposure and talcum. Dr. Kottle testified that in some cases heredity plays a part in contracting the disease. He agreed that some of these causes can be treated if diagnosed early enough; and stated that no matter what the cause, the disease is usually fatal, assuming that it is allowed to progress and no therapeutic strategy is developed; and that, where the cause is one that is treatable, the diagnosis is made early and an appropriate therapy is instituted, the chances for survival and for improvement of quality and quantity of life improve. He testified that 20-30% of pulmonary fibrosis patients respond to therapeutic strategies and get good results. According to Dr. Kottle, if Mrs. LeBlanc was one of those people whose underlying cause could be treated, early diagnoses and appropriate treatment might have given her a 90-100% chance of cure.
Dr. Les Breitman, a family practitioner, testified on behalf of the Defendant. He agreed that Dr. Barry did not manage Mrs. LeBlanc according to the appropriate standard of care but opined that this did not damage her. He stated that once pulmonary fibrosis develops it is self promulgating and the patient will go down hill until she dies. On the other hand, he testified that the causes can be treated before pulmonary fibrosis develops. However, he stated that, once pulmonary fibrosis develops, only palliative care can be given and the patient will die.
Although the record contains conflicting opinions, even the Defendant's expert agreed that the cause of pulmonary fibrosis could have been diagnosed and treated in a timely fashion. Further, it is undisputed that Dr. Barry did not follow those procedures which could have resulted in diagnosis and treatment of Mrs. LeBlanc's condition. Furthermore, it was the trial court's task, as trier of fact, to make credibility determinations in assessing the conflicts in the evidence of record. Obviously, the trial court gave more credibility to the expert testifying on behalf of the Plaintiff than to those who testified for the Defendant. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Canter v. Koehring, 283 So.2d 716 (La.1973). We find that there is a sufficient factual basis to support the trial court's determination that the substandard care of Dr. Barry resulted in harm to Mrs. LeBlanc and that it is not manifestly erroneous. Therefore, it will not be overturned.

LOST CHANCE OF SURVIVAL
The PCF next argues that the trial court erred in failing to reduce the award of damages for wrongful death by a percentage commensurate with the chance of survival lost by Mrs. LeBlanc.
The trial court made a wrongful death award of $250,000.00. Damages for loss of a chance of survival are available where "the tort victim had a chance of survival at the time of the professional negligence and ... the tortfeasor's action or inaction deprived the victim of all or part of that chance." Smith v. State, Dep't. of Health and Hospitals, 95-0038, p. 6 (La.6/25/96); 676 So.2d 543, 547. The PCF argues that the trial court granted a full recovery for wrongful death rather than a chance of survival and that the award should be reduced arguing that Mrs. LeBlanc lost only a chance of survival.
While the trial court, in its reasons for judgment, spoke in terms of an award for wrongful death, it is clear that the court *81 was considering Mrs. LeBlanc's lost chance of survival. He stated:
[T]he weight of the evidence proves that early diagnosis of the underlying causes of her pulmonary fibrosis and kidney disease would have significantly increased the opportunity for effective treatment and management of these conditions. In fact, many, although not all, of the causes of these disease are treatable, if not curable, if determined early on....
The Louisiana Supreme Court in Smith, 95-0038 at p. 7; 676 at 547-48, rejected the mechanistic use of a mathematical formula based on the percentage chance of survival lost in calculating damages for lost chance of survival, as follows:
[T]he method we adopt today in this decision, is for the factfinderjudge or juryto focus on the chance of survival lost on account of malpractice as a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages.
. . . .
The starting point of our analysis is to recognize that the loss of a less-than-even chance of survival is a distinct injury compensable as general damages which cannot be calculated with mathematical certainty. Next, we recognize that the factfinder should make a subjective determination of the value of that loss, fixing the amount of money that would adequately compensate the claimants for that particular cognizable loss.
Having found that the trial court considered the award in light of Mrs. LeBlanc's lost chance of survival, and in light of the court's ruling in Smith, we need only reduce the award if, as the PCF next asserts, it was an abuse of the trial court's discretion.

QUANTUM OF DAMAGES
The PCF next argues that the awards of damages made are excessive. The court awarded general damages of $750,000.00, $500,000.00 of which was awarded in her survival action. These awards were reduced to a total of $500,000.00 because of the medical malpractice cap.
Damages awarded by a jury are to be reviewed in the light most favorable to the prevailing party. O'Riley v. City of Shreveport, 30,107 (La.App. 2d Cir.01/23/98), 706 So.2d 213. The discretion vested in the trier of fact is great, such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Reasonable persons frequently disagree about the measure of general damages; therefore, it is only when the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id.

Stroud v. Golson, 32-044, p. 5 (La.App. 2 Cir. 6/16/99); 741 So.2d 182, 185, writ denied, 99-2108 (La.10/29/99); 744 So.2d 1286.
The record herein supports the trial court's determinations with to regard the relationship between Mr. and Mrs. LeBlanc and his loss of love and affection, society and companionship and his mental anguish as a result of the death of his wife:
Mr. and Mrs. LeBlanc were married in 1941 and lived together in a close and loving relationship for 53 years until her tragic death on March 4, 1994. During that time, Mrs. LeBlanc was a loving and devoted housewife, mother, and grandmother who was deeply committed to her family. Mr. LeBlanc worked for 43 years for Firestone, and it is evident *82 that the death of his wife caused both him and the other members of the family intense emotional distress. During the 73 days that Mrs. LeBlanc remained hospitalized at Lake Charles Memorial Hospital, Mr. LeBlanc remained ever faithful and vigilant as he provided support and comfort during his wife's final days.
Further, the record shows that Mrs. LeBlanc underwent years of unnecessary suffering as the result of the failure to render treatment which could have reduced her pain and improved the quality of her life.
Given the nature and closeness of the relationship between the LeBlancs and the extent of her pre-death suffering, and in light of the reduction in damages necessitated by the damage cap, we find no abuse of discretion in the trial court's award of damages.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the Appellant.
AFFIRMED.