774 So.2d 84 (2000)
Mary DAVIS
v.
WAL-MART STORES, INC.
No. 00-C-0445.
Supreme Court of Louisiana.
November 28, 2000.
*87 Roy C. Beard, Heather Graham Connor, Geoffrey Jacob Orr, Metairie, Counsel for Applicant.
David Maurice Cambre, New Orleans, Counsel for Respondent.
JOHNSON, Justice.
Plaintiff, Mary Davis, filed suit against defendants, Wal-Mart Stores, Inc., d/b/a/ Sam's Club, Lionel Johnson, the store supervisor, and ABC Insurance Company, alleging she was injured while shopping at a Sam's Club Store in Kenner, Louisiana. A jury trial on the merits was held on November 24, 1998 and the jury found that the defendants were not negligent or at fault, and thus, not liable to Ms. Davis. Upon the motion of Ms. Davis, the trial judge granted a judgment notwithstanding the verdict (JNOV) and conditional new trial, holding that the defendants were liable to plaintiff and awarded plaintiff $23,396.38 in past medical expenses and $125,000 in general damages. The court of appeal affirmed the trial court's decision, with an amendment to add a $40,000 award for future medical expenses.
We granted certiorari to determine whether the court of appeal erred in affirming the trial court's decision to grant the JNOV and conditional new trial and award of damages. We conclude that because the evidence presented to the jury did not point so strongly and overwhelmingly in favor of the plaintiff such that the jury could not have reasonably reached a contrary result, the trial court's granting of a JNOV was unwarranted. We further find that the jury's verdict was supportable by a fair interpretation of the evidence and the trial court's granting of the conditional new trial was unwarranted. Thus, we hold that the court of appeal erred in affirming the trial court's granting of a JNOV and the conditional new trial, and the jury's verdict must be reinstated.

FACTS AND PROCEDURAL HISTORY
On November 19, 1994, plaintiff, Mary Davis, and her friend, Carol Courouleau, were shopping at a Sam's Club store in Kenner, Louisiana. While shopping, Ms. Davis and Ms. Courouleau walked down an aisle where Christmas items were displayed on temporary, seasonal shelves. Underneath the temporary shelves were stacked boxes of merchandise containing the particular items displayed. As Ms. Davis and Ms. Courouleau viewed merchandise on this aisle, several boxes located underneath the shelf fell to the floor and landed in front of them. A wooden Santa Claus figurine or statue was on the shelf above these boxes. As Ms. Davis bent down to pick up the boxes, and while in a crouched position, she was hit in the head by the wooden Santa Claus. The Santa Claus was described as non-traditionally structured, but modern in design, tall and thin and coming to a point at the top. The object weighed approximately 2-3 three pounds and was approximately 12 to 15 inches in height. Ms. Davis testified that as soon as the Santa Claus hit her head, she jumped back and grabbed her shopping cart. She stated that her right eye then began to water, as if she were crying, and she developed a knot on her head. After the incident, Ms. Davis and Ms. Couroleau continued to shop around the store for approximately 5-10 minutes before checking out.
Before leaving the store, Ms. Davis decided to report the incident to the store supervisor, Lionel Johnson. Mr. Johnson, observed that Ms. Davis' eye was watery, she had a knot on her head, and she was flustered. Mr. Johnson testified that when he inspected the site of the incident, the Santa Claus was standing in an upright position on the shelf. He did notice that the shelf on which the Santa had been standing was buckled or had what he described *88 as a "pucker" in it. Although it was store policy to take a Polaroid snapshot of store items involved in an accident, Mr. Johnson did not take a picture of the Santa Claus or the shelf in this case. Mr. Johnson testified that he did not know what happened to the shelf or the Santa Claus after this incident, thus neither object was presented as evidence at trial.
Ms. Davis testified that neither she nor Ms. Courouleau touched the shelf nor the Santa Claus before it fell, and there were no other customers in the immediate area of the shelf. She further testified that after the incident occurred, someone tried to stand the Santa Claus back on the shelf, but it would not stand upright and it had to be placed on its side. The record is not clear as to who actually put the Santa Claus back on the shelf. Ms. Davis testified that she thought it was Ms. Courouleau who put it back. Ms. Courouleau stated she didn't remember if it was she or someone else who replaced the Santa.
After hearing the testimony of all the witnesses and weighing all evidence, the jury rendered judgment in favor of Sam's, finding that Sam's was not negligent or at fault and, thus, was not liable to Ms. Davis. Thereafter, Ms. Davis filed a motion for a JNOV, and in the alternative, Motion for New Trial. The trial court granted the JNOV and conditional new trial, and after finding Sam's liable to her, awarded Ms. Davis $23,396.38 in past medical expenses and $125,000 in general damages.
In its reasons for granting the JNOV, the trial court stated, "it is obvious to the court that the jury completely disregarded the charges on the law of negligence and on strict liability and the traditionally accepted historical evidence relating to causation. Applying the standard of review for a JNOV, the court finds that the facts and inferences point so strongly and overwhelmingly in favor of the plaintiff that the court believes that reasonable men could not arrive at a contrary verdict." The trial court found that the hazardous condition proven in this case was the presence of a temporary shelf with a defect in it described as a curvature or "pucker" which precluded an object with a flat base from remaining in an upright position. The trial court further found that a preponderance of the evidence was in favor of a finding that the pucker on the shelf constituted a premise hazard, thereby shifting the burden of proof to the defendant to exculpate itself from fault by showing that it exercised reasonable care through appropriate clean up and inspection procedures, or otherwise. The trial court concluded that Sam's failed to offer any evidence to contradict that offered by the plaintiff. The court concluded that Sam's failed to exculpate itself from fault, either on a negligence basis or on a strict liability basis.
With regard to the issue of spoilation of evidence, the trial court found that the testimony clearly warranted the presumption that the evidence would have been detrimental to the defendant's case in accordance with the court's instructions. The trial court found that Sam's failed to explain why they neither photographed the shelf nor the statue itself in order to escape the adverse presumption that the production of those items would have been detrimental to its case.
As to the award of damages, the trial court noted that in determining the proper amount of damages to be awarded following the granting of a JNOV, the trial judge is not constrained, as are courts of appeal, to raising or lowering awards to the lowest or highest point reasonably within the discretion afforded that court, and the trial court is to render a de novo award based on its independent assessment of the injuries and damages. Anderson v. NOPSI, 583 So.2d 829 (La.1991); Doe v. Doe, 94-2284 (La.App. 1 Cir. 6/23/95), 657 So.2d 628.
Defendant appealed the granting of the JNOV and conditional new trial. Ms. Davis answered the appeal and alleged that the award for general damages was *89 inadequate, and that the trial court erred in failing to award past and future lost wages and future medical expenses. The Fifth Circuit Court of Appeal, with one judge dissenting, amended the judgment to include an award for future medical expenses in the amount of $40,000, and as amended, affirmed the decision of the trial court.
As to the issue of liability, the court of appeal stated, "we agree with the trial court that reasonable men of impartial judgment, under the facts of this case, could not have reached a conclusion other than the defendant's store contained a hazardous condition which caused the Santa Claus to fall on Ms. Davis' head." The court of appeal also found no error in the trial court's determination that Ms. Davis suffered compensable injuries and no abuse of discretion in the award of general damages. We granted certiorari to review the correctness of that decision. Davis v. Wal-Mart Stores, Inc., 00-C-0445 (La.4/20/00), 759 So.2d 768.

DISCUSSION
La.Code of Civil Procedure art. 1811(F) is the authority for a JNOV. This article provides that a motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both. The standard to be used in determining whether a JNOV has been properly granted has been set forth in our jurisprudence as follows:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Smith v. Davill Petroleum Company, Inc. d/b/a/ Piggly Wiggly, 97-1596 (La.App. 1 Cir. 12/9/98), 744 So.2d 23. See also Powell v. RTA, 96-0715 (La.6/18/97), 695 So.2d 1326; Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991); State of Louisiana, DOTD v. Scramuzza, 95-786 (La.App. 5 Cir. 4/3/96), 673 So.2d 1249; Seagers v. Pailet, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700; Engolia v. Allain, 625 So.2d 723, 728 (La.App. 1 Cir.1993); Adams v. Security Ins. Co. Of Hartford, 543 So.2d 480, 486 (La. 1989).
The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Anderson v. New Orleans Public Service, Inc., at p. 832.

LIABILITY
On the issue of liability, the trial court charged the jury both on a standard of negligence under La. Civil Code article 2315 and on strict liability under Civil Code article 2317. The court further charged the jury on spoliation of evidence as it was appropriate to the evidence in this case. The applicable statute as to liability in this case is La. R.S. 9:2800.6 which governs negligence claims brought against a merchant, such as Sam's. La. R.S. 9:2800.6 reads, in pertinent part:

*90 (A) A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
(B) In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
This court has held in Smith v. Toys "R" Us, Inc., et al., 98-2085 (La.11/30/99), 754 So.2d 209, that the heightened burden under R.S. 9:2800.6(B) is applicable only in situations where a customer "falls" on a merchant's premises. In a "falling merchandise" case under R.S. 9:2800.6(A), as in the present case, the standard is that the merchant must use reasonable care to keep its aisles, passageways and floors in a reasonably safe condition and free of hazards which may cause injury. Further, a plaintiff who is injured by falling merchandise must prove, even by circumstantial evidence, that a premise hazard existed. Id. Once a plaintiff proves a prima facie premise hazard, the defendant has the burden to exculpate itself from fault by showing that it used reasonable care to avoid such hazards by means such as periodic clean up and inspection procedures. Id.
To prevail in a falling merchandise case, the customer must demonstrate that (1) he or she did not cause the merchandise to fall, (2) that another customer in the aisle at that moment did not cause the merchandise to fall, and (3) that the merchant's negligence was the cause of the accident: the customer must show that either a store employee or another customer placed the merchandise in an unsafe position on the shelf or otherwise caused the merchandise to be in such a precarious position that eventually, it does fall. Only when the customer has negated the first two possibilities and demonstrated the last will he or she have proved the existence of an "unreasonably dangerous" condition on the merchant's premises. Smith v. Toys "R" Us, Inc., et al., supra.
Under Smith, supra, though evidence of adequate inspection and clean up procedures may yet be part of the merchant's burden to disprove negligence, evidence of the opposite is certainly relevant as part of the customer's burden to prove negligence: plaintiff customer will carry his or her burden if he or she can make a prima facie showing that inadequate or neglected inspection and clean up procedures left merchandise in such an unstable or precarious position that it falls from its stacked or displayed position to cause injuries to him or her. Id., at p. 5, 754 So.2d at 212.
Our inquiry, then, is whether the facts and inferences point so strongly in favor of a finding that neither Ms. Davis nor any other customer caused the merchandise to "fall" and a finding that Sam's negligence was the cause of the incident. If the answer is yes, the trial court was correct in granting the JNOV because no reasonable jury could have found to the contrary. However, if the answer is no, *91 the jury's verdict should not have been disturbed and the trial court was incorrect in granting the JNOV. After a review of the record, we conclude that there was sufficient evidence to warrant a finding that Sam's was not negligent or strictly liable to Ms. Davis for this incident. The evidence presented to the jury was not so much in favor of Ms. Davis as to liability that no reasonable jury could have held Sam's not liable. Thus, the trial court erred in granting the JNOV.
With regard to negligence and/or strict liability, the jury heard testimony from four witnesses, Mary Davis, Carol Courouleau, Lionel Johnson and Jimmie Martin. The mere fact that merchandise falls is not sufficient to prove the negligence of the defendant. Smith, supra. Both Ms. Davis and Ms. Courouleau testified that they did not touch the Santa Claus nor the shelf immediately prior to the fall. They testified further that there were other customers in the aisle immediately prior to and at the time of the incident but did not actually observe any other customer touch the Santa Claus or the shelf before the fall. Ms. Davis maintained that she and Ms. Courouleau were the closest to the shelf where the Santa Claus was located. However, both Ms. Davis, Ms. Courouleau, and Mr. Johnson, all agreed that the store was very crowded and busy on this particular Saturday. Mr. Johnson testified that the day of the accident was in fact one of the busiest days in the store.
Although Mr. Johnson testified that he observed a "pucker" in the shelf, he also stated that he observed the Santa Claus sitting in an upright position when he went to view the scene after the incident occurred. There was no evidence that the Santa Claus was sitting on this "pucker" before it fell. Mr. Johnson also testified that he did not know exactly what happened to the Santa Claus or the shelf after the incident, but, to his knowledge, neither object was removed from the store, so, presumably they remained in place throughout the Christmas season.
Mr. Martin, an employee of Sam's, testified that it was his responsibility to "zone" or inspect the aisle on which the incident occurred. Sam's did not have a specific policy in effect which required employees to write down the specific times that they inspected an area. However, Mr. Martin testified that he would attempt to zone his area at least every half hour. He could not recall the exact time or how long before the incident that he had zoned this particular aisle. He stated that when Mr. Johnson told him to zone the aisle on which the incident occurred, it did not appear to be out of order and the Santa Claus was sitting in an upright position. He further stated that when he inspected the shelf, he did not observe a "pucker" or any other defect in the shelf and the Santa Claus appeared stable. Mr. Martin further indicated that there had been no other falling merchandise incidents in his area during the time period that he worked at Sam's.
In the instant case, we find that there was sufficient evidence presented to the jury for them to reasonably conclude that Ms. Davis failed to meet her burden of proof as to liability and that Sam's presented sufficient evidence to exculpate itself from negligence and/or strict liability. Although Ms. Davis and Ms. Courouleau stated that neither of them touched the Santa Claus nor shelf prior to the fall, nor did they see another customer do so, the trier of fact must decide which fact witnesses are more credible, and the jury could very well have discredited their testimony. It is also probable that the jury discredited Ms. Davis' testimony as to how the incident occurred based on the inconsistencies in her testimony as to her damages.
A review of the record clearly reveals that there were issues of credibility that the jury, as the finder of fact, was free to weigh. When there is evidence before the trier of fact which, upon its reasonable *92 evaluation of credibility, furnishes a reasonable factual basis for its finding, on review the appellate court should not disturb the factual finding in the absence of manifest error. Canter v. Koehring, Co., 283 So.2d 716, 724 (La.1973). There was sufficient evidence for the jury to reasonably conclude that Sam's was not liable to Ms. Davis under negligence or strict liability. Therefore, the JNOV should not have been granted and the jury's verdict must be reinstated.
A motion for JNOV may be joined with an alternative motion for new trial. La. C.C.P. art. 1811(a)(2) provides:
A. (1) Not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment under Article 1913, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days of legal holidays, after the jury was discharged.
(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for the new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
(3) If the motion for new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of the signing of the judgment notwithstanding the verdict under Article 1913. The motion shall be served pursuant to Articles 1976 and 1314.
E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted.
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.
La. C.C.P. art. 1811.
La. C.C.P. art. 1972 provides the peremptory grounds for a new trial: (1) when the verdict or judgment appears clearly contrary to the law and evidence, (2) when the party has discovered, since the trial, evidence important to the cause, which he *93 could not, with due diligence, have obtained before or during the trial, and (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. Moreover, La. C.C.P. art. 1973 provides the trial court with discretionary authority to grant a new trial "in any case if there is good ground therefor, except as otherwise provided by law."
In the instant case, the trial judge did not state any of the peremptory grounds for granting a new trial listed in La. C.C.P. art. 1972 or the discretionary grounds in La. C.C.P. art. 1973. The trial judge gave the same reasons for conditionally granting a new trial that he did for granting the JNOV. He stated that he believed the jury had "completely disregarded the charges on the law of negligence and on strict liability and the traditionally accepted historical evidence relating to causation." Although not explicitly stated, the trial court's reasons may be construed as saying that the verdict appears clearly contrary to the law and the evidence under article 1972(1) or that there is a good ground therefore under article 1973.
The motion for a new trial requires a less stringent test than for a JNOV as such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. Whether to grant a new trial requires a discretionary balancing of many factors. Gibson v. Bossier City General Hospital, et al., 594 So.2d 1332 (La.App. 2 Cir.1991). Unlike the standard applicable to a motion for JNOV, the trial judge may evaluate evidence without favoring any party and draw his own inferences and conclusions. Perhaps the significant authority is the ability to assess the credibility of witnesses when determining whether to grant or deny the motion for a new trial. Wyatt v. Red Stick Services, Inc., et al., 97-1345 (La.App. 3 Cir. 4/1/98), 711 So.2d 745 citing Morehead v. Ford Motor. Co., 29,299 (La.App. 2 Cir. 5/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/7/97), 703 So.2d 1265. The trial court's discretion in ruling on a motion for new trial is great, and its decision will not be disturbed on appeal absent an abuse of that discretion. Id. Furthermore, this court has held that "when the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered." Lamb v. Lamb, 430 So.2d 51 (La.1983).
Although the granting or denying of a motion for new trial rests within the wide discretion of the trial court, the discretion of the court is limited:
The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Gibson v. Bossier City General Hospital, et al., supra. See also Engolia v. Allain, 625 So.2d 723 (La. App. 1 Cir.1993). (Emphasis added)
The fact that a determination on a motion for a new trial involves judicial discretion does not imply that the trial court can freely interfere with any verdict with which it disagrees. Wyatt v. Red Stick Services, Inc. et al., supra.
We are faced with the balancing of two very important concepts: the great deference given to the jury in its fact finding role and the great discretion given *94 to the trial court in deciding whether to grant a new trial. The scales are clearly tilted in favor of the survival of the jury's verdict, but the trial court is left with a breadth of discretion which varies with the facts and events of each case. Gibson v. Bossier City General Hospital, supra.
We have very little guidance from the legislature as to whose province should prevail, the judge or the jury. Clearly there is no statutory or jurisprudential authority nor is there a blanket rule that either judge or jury should prevail over the other. Instead, we are guided by our lower courts who were faced with the responsibility of making such a determination based on the particular facts in the case before it. The decision must be made on a case by case basis.
The third circuit court of appeal in Wyatt v. Red Stick Services, Inc. et al, supra, addressed whether the trial court erred in granting both a JNOV and a conditional new trial and held that the trial court erred in granting the conditional new trial. There, the court found that there was a basis for the jury's decision with regard to medical evidence and found that the jury's verdict on both issues of negligence and medical causation was not clearly contrary to the law and evidence. The court further found that no miscarriage of justice resulted from the jury's verdict.
In Zatarain v. WDSU-Television, Inc., et al, 95-2600 (La.App. 4 Cir. 4/24/96), 673 So.2d 1181, the fourth circuit court of appeal held that the trial court did not abuse its discretion in denying the motion for new trial on the basis that the evidence was contrary to the law and evidence. There, the court after closely reviewing the record to determine whether the jury's verdict was contrary to the law and evidence found that the jury verdict was based on a pure credibility call between two groups of witnesses testifying to two different versions of the series of events. The court held that because the jury verdict was supportable by a fair interpretation of the evidence, the trial judge did not abuse his discretion in denying the motion for new trial.
Similarly in State, DOTD v. August Christina & Brothers, Inc., 97-244 (La. App. 5 Cir. 2/11/98), 716 So.2d 372, the fifth circuit court of appeal held that the trial court committed grave error in granting a new trial on the basis of the evidence being contrary to the law and evidence.
There are cases where the court has held that the trial court did not abuse its discretion in granting a motion for new trial. In Magee v. Pittman, 98-1164 (La. App. 1 Cir. 5/12/00), 761 So.2d 731, the court held that "an award of only $20,000 under the circumstances of the case was an abuse of the jury's discretion, such that the trial court was proper to conclude that a new trial was warranted with respect to the elements of the damage award." The court in Gilley v. Wendy's Inc., 31,353 (La.App. 2 Cir. 12/9/98), 723 So.2d 517, held that the trial court did not abuse its discretion by granting a new trial instead of a JNOV. Here, the jury failed to award general damages to a patron after finding the restaurant liable for the patron's fall. The trial court found that plaintiff was entitled to an award of general damages as well as medical expenses.
In the instant case, we have closely reviewed the record to determine whether the jury's verdict was contrary to the law and evidence, i.e. to determine whether the jury's verdict is supportable by any fair interpretation of the evidence. As we have stated, the jury was clearly faced with serious credibility issues. In evaluating the entirety of Ms. Davis' testimony as to liability and damages, there was evidence presented to the jury that Ms. Davis was less than honest with her treating physicians as to her medical history. The vast and crucial inconsistencies in Ms. Davis' account of her medical symptoms and medical history undoubtedly factored into the jury's credibility determination as to Ms. Davis' account on how the accident occurred and ultimately affected *95 the jury's decision regarding liability. The jury's verdict, in finding no liability on the part of Sam's is supportable by a fair interpretation of the evidence presented at trial. The trial judge's discretion does not entitle him to interfere with this verdict simply because he disagrees with it.
Based on the facts in this case, we find no peremptory or discretionary grounds on which the trial court could have based its conditional grant of a new trial. The jury's verdict was supportable by a fair interpretation of the evidence. We find no good ground for the granting of a new trial and find there would have been no miscarriage of justice in allowing the jury's verdict to stand. Therefore, we hold that the granting of the motion for new trial was unwarranted and the court of appeal erred in affirming this decision.

CONCLUSION
After a thorough review of the record, we do not find that the evidence so strongly and overwhelmingly pointed to only one verdict, or that the jury verdict was so unreasonable that reasonable men could have only reached one conclusion. It is not the role of the trial judge to substitute his/her evaluation of the evidence for that of the jury. In light of these findings, we hereby reinstate the jury's verdict, finding no liability on the part of defendant, Wal-Mart Stores, Inc.
REVERSED.
LEMMON, J., concurs and assigns reasons.
LEMMON, J., Concurring.
This case presents an opportunity for this court to establish the standard by which an appellate court reviews the trial judge's conditional granting of a new trial after the appellate court reverses the trial judge's granting of a judgment notwithstanding the verdict (JNOV). In the present case, the majority states that there is a different standard for reviewing a conditional grant of a new trial than the standard for reviewing a JNOV, but appears to apply the same standard. Perhaps the appropriate standard for reviewing this unusual, but mandatory, procedural device must be developed on a case-by-case basis.[1]
NOTES
[1] The standard for reviewing the granting of a simple motion for new trial (even when not joined with a motion for JNOV) has presented a great deal of difficulty in the intermediate appellate courts which this court may attempt to resolve. See Martin v. Heritage Manor South, cert. granted, 00-1023 (La.6/16/00), 763 So.2d 611.