I,KIRBY, Judge.
Plaintiff, Michelle Coleman, appeals the trial court judgment in her favor and against defendant, Wal-Mart Stores, Inc. (“Wal-Mart”). A jury found plaintiff and Wal-Mart each 50% at fault in the December 10, 1995 accident in which plaintiff was injured in a Wal-Mart store on Bundy Road in New Orleans. The jury assessed plaintiffs damages at $2,500.00 in general damages and $1,045.00 in past medical expenses, but found that plaintiff was not entitled to any amount for future medical expenses. The trial court adopted the jury’s verdict and awarded plaintiff $1,772.50 in compensatory damages after reducing the total amount of damages by 50% to reflect the fault attributable to plaintiff in the accident.
Plaintiff argues in this appeal that the trial court erred in finding her at fault in the accident and in awarding inadequate general damages. Wal-Mart has not appealed the trial court judgment. On the issue of fault, the following evidence was *718 presented at trial. Ann Mills was an assistant manager at the Bundy Road Wal-Mart on December 10, 1995. She testified that the merchandise baskets used at Wal-Mart are not as deep as grocery store carts. Mills investigated the accident that involved plaintiff and completed an incident report.
1 ¿The incident report was introduced into evidence. The report indicated that plaintiff was sitting in the layaway section of the store when the accident occurred. In answer to the question “What did alleged injured person say happened?” Mills wrote “Miss Coleman alledges [sic] that the 12” bike fell from a shopping cart hitting her right shoulder.” Her comments under the section entitled “Our comments on how incident occurred,” were “Customer was sitting on 4 wheeler when 12” bike fell from shopping cart hitting her right shoulder.”
Mills stated at trial that there is no information on the incident report that indicated that plaintiff was in a location where she was not supposed to be, or that she was told to move when the cart of bicycles was placed near her. Her investigation found nothing to contradict plaintiffs version of the accident. Mills testified that the item referred to as a “4 wheeler” in her report is a cart with four wheels and a flat bed-type surface that is close to the ground and is used to transport merchandise around the store.
On cross-examination, Mills testified that the shopping carts used by Wal-Mart in 1995 were used to transport the type of bicycle that allegedly fell on plaintiff because the bicycles fit very easily inside of those carts. When she went to the layaway area of the store after being notified of the accident, she found two of these bicycles in a shopping cart and none on the floor. She said that the layaway area was crowded when she arrived, but none of the customers or sales associates saw the accident.
She said the shopping carts containing the bicycles measured 37 inches from the top of the cart to the floor and the length of the carts was 35$ inches. The carts measured from 16 to 18 inches deep and from 20$ to 24 inches wide.
l3On redirect examination, Mills admitted that she had no independent recollection of the accident or of the placement of the bicycles in the cart on the night in question. She took measurements of the shopping carts several days before trial in response to a request from plaintiffs attorney. She also admitted that she had no personal recollection of how crowded the layaway section of the store was on the night in question; she said her testimony that the layaway area was crowded was based on the fact that it is always crowded in the days before December 15th because that is the last day to get items out of layaway.
The plaintiff testified that on the evening of December 10, 1995, she went to the layaway department of Wal-Mart by herself to get a toy she had placed in layaway on an earlier date. After she made her final payment for the toy and waited for it to be brought out to her, there was one other woman in the waiting area. The other woman had two children with her, and they were sitting on a bench behind plaintiff. Because there was only one bench in the area and there were no seats left, plaintiff sat down on a cart that was in the middle of the floor while she waited for delivery of the toy. As she was seated on the cart, a Wal-Mart employee rolled a shopping basket with two bicycles in it to an area right behind plaintiff and then walked away. Shortly after he walked away, one of the bicycles fell out of the cart and hit her right shoulder. Plaintiff stated that she knew the man who rolled *719 the cart of bicycles behind her was a Wal-Mart employee because he was wearing a Wal-Mart vest.
Plaintiff stated that shortly after the bicycle fell on her, someone helped get the bicycle off of her, but she did not know the identity of the person. The cashier in layaway called for assistance and Ann Mills came and filled out a report and gave plaintiff an ice pack.
|40n cross-examination, plaintiff stated that she chose not to move from where she was seated on the cart after the shopping cart containing the two bicycles was placed behind her. She said the bicycles did not appear to be wobbly or shaky, and she was not concerned that anything might fall.
To prevail in this “falling merchandise” case under La. R.S. 9:2800.6(A), the plaintiff was required to prove (1) that she did not cause the. merchandise to fall, (2) that another customer in the aisle at that moment did not cause the merchandise to fall and (3) that the merchant’s negligence was the cause of the accident. Davis v. Wal-Mart Stores, Inc., 2000-0445, p. 6 (La.11/28/00), 774 So.2d 84, 90. The trial court found that Wal-Mart’s negligence was a cause of the accident, and Wal-Mart has not appealed the judgment. The plaintiff has appealed the trial court’s finding that she was at fault in the accident. The record in this case is completely devoid of any evidence indicating that plaintiff or another customer caused the bicycle to fall. Therefore, we find that the jury erred in finding plaintiff 50% at fault, and the trial court erred in adopting this portion of the jury’s verdict as the judgment of the court. We amend the portion of the judgment assessing 50% of the fault for this accident to plaintiff to reflect that 100% of the fault is assessed to Wal-Mart.
On the issue of the adequacy of the general damages award of $2,500.00, the evidence includes the testimony of Dr. Roy Marrero and plaintiff. Dr. Marrero, an orthopedic surgeon, testified that he first treated plaintiff prior to the December 1995 Wal-Mart accident on September 27, 1994, following surgery that had been performed on her right shoulder in 1993. His initial diagnosis was bursitis of the shoulder. He recommended physical therapy and analgesic painkillers. An MRI performed in April 1995 indicated a cyst in the right shoulder. Dr. Marrero | ¿referred plaintiff to a tumor specialist, Dr. Hinrich. Dr. Marrero saw plaintiff again on May 1, 1995 and then did not see her again until December 19,1995.
Dr. Marrero testified that he reviewed Dr. Hinrich’s records regarding plaintiff, which indicated that plaintiff underwent a surgical procedure in July 1995 in which the shoulder area was explored and a large cyst was removed from the shoulder. It is important to note that Dr. Hinrich did not testify at this trial and his records were not introduced into evidence. Dr. Marrero explained the procedure used in cyst removal.
When plaintiff returned to Dr. Marrero on December 19, 1995, she reported that her right shoulder was injured when a bicycle fell on it at Wal-Mart on December 10, 1995. He said that her continued shoulder pain nine days after the accident was understandable given the fact that she had undergone a surgical procedure on the shoulder in July 1995. He said that plaintiffs medical history, including the surgical procedure of July 1995, made her shoulder much more vulnerable to injury from the type of accident that occurred. He said that from December 1995 until the date of trial in early 1999, plaintiffs condition has shown improvement at times and regression at other times. Dr. Marrero stated that the December 1995 accident aggravated plaintiffs pre-existing condition. Fol *720 lowing the plaintiffs December 1995 visit, Dr. Marrero recommended physical therapy and pain medication. He discontinued his recommendation of physical therapy in October 1996. He said that his treatment of plaintiff between 1995 and 1999 was partly for her pre-existing condition and partly for the aggravation of the pre-exist-ing condition caused by the December 1995 accident at Wal-Mart.
Dr. Marrero stated that during his course of treatment of plaintiff, the range of motion in her shoulder would vary from visit to visit. He said that this will | fiprobably continue and that there is a probability that the aggravation of the preexisting condition has had some effect on the variations in the range of motion in plaintiffs shoulder.
On cross-examination, Dr. Marrero testified that when he saw plaintiff in 1994, prior to the Wal-Mart accident, her range of motion in her shoulder was only 50%. He said that a procedure performed on plaintiff prior to the May 1995 surgery involved peeling the bursa off of the muscles, and that this procedure usually leaves a patient with some limitations or restrictions. He also said that the type of cyst removal surgery performed by Dr. Hinrich on plaintiff in July 1995 usually causes some degree of permanent impairment or limitation in the patient.
On redirect examination, Dr. Marrero stated that he thinks the Wal-Mart accident contributed to some of plaintiffs ongoing pain since that time.
Plaintiff testified that she first injured her right shoulder in a 1991 accident involving a bus on which she was traveling. She received treatment for this injury, including surgical procedures, but never stopped having pain in that shoulder. She claims that the pain in her shoulder had been lessening when the bicycle fell on her at Wal-Mart. However, some pain remained.
After the accident at Wal-Mart, plaintiffs shoulder was sore. She went to Dr. Marrero nine days later. In the days between the accident and her visit to Dr. Marrero, plaintiff applied ice packs to her shoulder and took pain relievers. Dr. Marrero prescribed physical therapy and pain medication. Plaintiff went to physical therapy for a few months, but then quit going due to problems with transportation, babysitters and illness. She said the pain in her shoulder since the Wal-Mart accident is different from the pain she felt in that area before that accident. On cross-examination, plaintiff admitted that during her course of |7treatment with Dr. Marre-ro, he also treated her for other physical problems that were unrelated to the injury she suffered on December 10, 1995 at Wal-Mart.
Our Supreme Court has ruled that the discretion vested in the trier of fact in the awarding of general damages is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Based on the evidence presented at trial regarding plaintiffs injury resulting from this accident, we cannot say that the trial court abused its discretion in awarding plaintiff $2,500.00 in general damages.
For the reasons stated above, we amend the trial court’s judgment and find that Wal-Mart was 100% at fault in the December 10, 1995 accident. In all other respects, the trial court’s judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.