934 So.2d 760 (2006)
Ericka & Jamal HUNTER, Both Individually & on Behalf of Jamal Hunter, II
v.
STATE of Louisiana, Through the LSU MEDICAL SCHOOL & Earl K. Long Memorial Hospital.
No. 2005 CA 0311.
Court of Appeal of Louisiana, First Circuit.
March 29, 2006.
*762 Sumpter B. Davis, III, Baton Rouge, Counsel for Plaintiffs/Appellants Ericka & Jamal Hunter, individually and on behalf of Jamal Hunter, II.
Carey R. Holliday, Baton Rouge, Counsel for Defendants/Appellees State of Louisiana, through LSU Medical School & Earl K. Long Memorial Hospital.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
In this medical malpractice action, plaintiffs, Ericka and Jamal Hunter, Sr., individually and on behalf of their minor child, Jamal Hunter, II, appeal the trial court's judgment dismissing their claim with prejudice. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On November 15, 1994, Jamal Hunter, II was born at Earl K. Long Medical Center (EKL). During the delivery, a shoulder dystocia was encountered, whereupon Jamal's left shoulder became lodged against his mother's pelvis. Following three maneuvers performed by the second year resident in charge of the delivery, Dr. Louise Collins, Jamal was born. Following his birth, it was discovered that Jamal's left arm was limp, a condition that was subsequently diagnosed as Erb's Palsy.
Thereafter, Ericka and Jamal Hunter, Sr., individually and on behalf of Jamal Hunter, II, brought an action against the State of Louisiana, through the Louisiana State University Medical School and EKL, alleging that the defendants deviated from the standard of care during the delivery of Jamal. Particularly, plaintiffs asserted there was inadequate supervision of Dr. Collins and that Dr. Collins used excessive traction to resolve the shoulder dystocia. Following a jury trial, a unanimous verdict was returned, finding that plaintiffs did not prove by a preponderance of the evidence that the care or treatment provided EKL and/or Dr. Collins fell below the applicable standard of care. Thereafter, the trial court rendered judgment in accordance with the jury's verdict in favor of the defendants and dismissed plaintiffs' claims with prejudice. The trial court also subsequently denied plaintiffs' motion for judgment notwithstanding the verdict (JNOV) and alternatively, their motion for new trial. The plaintiffs now appeal from these judgments.

DISCUSSION

Admission of Evidence
In their first assignment of error, the plaintiffs contend that the trial court erred in admitting medical evidence *763 related to the birth of Ericka Hunter's third child, which occurred after the birth at issue in the instant case, but refusing to admit evidence related to the medical malpractice action filed in relation to that third birth. Generally, all relevant evidence is admissible. La. C.E. art. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to a determination of the action more or less probable than it would be without the evidence. La. C.E. art. 401. However, relevant evidence may be excluded if, among other things, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. C.E. art. 403. Whether evidence is relevant is within the discretion of the trial judge, and his ruling will not be disturbed on appeal in the absence of a clear abuse of his discretion. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 476-477, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094.
During the argument on the motion in limine, the trial court specifically found that medical records from the birth of plaintiffs' third child, as well as those from the birth of plaintiffs' first child, were relevant because issues had been raised regarding knowledge of Ericka Hunter's medical condition and prescription. Further, the trial court specifically determined that any relevance of evidence of the medical malpractice action in relation to the third birth, which action was filed and resolved in Washington, would be substantially outweighed by the danger of unfair prejudice. According to the trial court, the jury could be led to believe that because there was malpractice in the third birth, there was malpractice in the birth at issue, despite the fact that different facts and situations were involved. Based on our review of the record, we find no abuse of the trial court's discretion in admitting evidence of the third child's birth, but refusing to admit evidence of the malpractice action.

Mistrial
The plaintiffs next contend that the trial court erred in failing to order a mistrial when, during its cross-examination of Ericka Hunter, defense counsel implied that Jamal Hunter, Sr. was a convicted felon. The court on its own motion, or on the motion of any party, after hearing, may grant a mistrial. La. C.C.P. art. 1631(C). Generally, mistrials are properly granted because of some fundamental failure in the proceeding. A motion for mistrial in a civil case should be granted under the following circumstances: (1) when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity; and (2) where no other remedy would provide relief to the moving party. Barnes v. Thames, 578 So.2d 1155, 1161 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La. 1991). Motions for mistrial should also be granted upon proof of prejudicial misconduct occurring during a jury trial, which cannot be cured by admonition or instruction. Because a mistrial results in the discharge of one jury and the impaneling of another to try the case anew, it is a drastic remedy. The trial judge is vested with broad discretion to grant a motion for mistrial where no other remedy would afford relief or where circumstances indicate that justice may not be done if the trial continues. This court should not disturb the trial court's determination unless there was an abuse of discretion. Barnes, 578 So.2d at 1161.
During cross-examination of Ericka Hunter, defense counsel asked a series of questions regarding her relationship with *764 her husband during her second pregnancy. In particular, defense counsel asked her if she was "aware that [Jamal Hunter, Sr.] was convicted of a felony while you were down here and it was a domestic dispute." Following the question, plaintiffs' counsel asked to approach the bench and stated "this is bordering on a mistrial." A bench conference was held, whereupon the trial court decided to admonish the jury to disregard the question. Thereafter, the jury was instructed to disregard the question and the question was ordered stricken from the record.
From our review of the record, we find no abuse of discretion by the trial court in admonishing the jury to disregard defense counsel's questions, as opposed to granting a mistrial. The granting of a motion for mistrial is a severe remedy that should be reserved for the most egregious and prejudicial conduct, which would constitute a failure in the proceedings. Tadlock v. Taylor, 02-0712, p. 16 (La.App. 4th Cir.9/24/03), 857 So.2d 20, 32, writ denied, 03-3265 (La.3/12/04), 869 So.2d 819. Plaintiffs argue "the jury already [did] not like Ericka Hunter" and the defense, in asking this question, continued to present Ericka Hunter in the worse possible light. In this case, we find no error in the trial court's determination that the statements by defense counsel, while improper, do not rise to the level of egregious and prejudicial conduct outlined above. As such, we find the trial court did not abuse its discretion in deciding to instruct the jury to disregard defense counsel's questions regarding Jamal Hunter, Sr. as opposed to granting a mistrial.

Motion for JNOV and Motion for New Trial
Finally, plaintiffs contend that the trial court erred in denying their motion for JNOV and alternatively, their motion for new trial. A JNOV should be granted only if the trial court, after considering the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on that issue. Broussard v. Stack, 95-2508, p. 14 (La.App. 1st Cir.9/27/96), 680 So.2d 771, 779-780. If there is substantial evidence opposed to the motion that is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Davis v. Wal-Mart Stores, Inc., 00-0445, p. 4 (La.11/28/00), 774 So.2d 84, 89. In making this determination, the court should not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. Broussard, 95-2508 at p. 15, 680 So.2d at 780. The standard to be applied by the appellate courts in reviewing the denial of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous. Broussard, 95-2508 at p. 15, 680 So.2d at 780.
However, the motion for a new trial requires a less stringent test than for a JNOV, as such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. Davis, 00-0445 at p. 10, 774 So.2d at 93. In considering a motion for new trial, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusions and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness. Broussard, 95-2508 at p. 16, 680 So.2d at 781. The trial court's discretion in ruling on a motion for new trial is great, and its *765 decision will not be disturbed on appeal absent an abuse of that discretion. However, the fact that a determination on a motion for new trial involves judicial discretion does not imply that the trial court can freely interfere with any verdict with which it disagrees. Fact-finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Davis, 00-0445 at p. 10, 774 So.2d at 93.
In the instant case, plaintiffs had the burden of proving by a preponderance of the evidence the applicable standard of care, that EKL and/or Dr. Collins breached the standard of care, and that the substandard care caused an injury that Jamal would not otherwise have suffered. See Dumont v. Maaliki, 99-1850, p. 4 (La.App. 1st Cir.9/22/00), 769 So.2d 1230, 1232. The majority of plaintiffs' argument in support of their motion for JNOV and motion for new trial, both in the trial court and on appeal, asserts that the jury determined the case not based on the primary negligence of EKL and/or Dr. Collins, but on the comparative fault of Ericka Hunter. According to the plaintiffs, the jury completely disregarded the evidence showing a breach of the standard of care by EKL and/or Dr. Collins and therefore, its motion for JNOV and motion for new trial should have been granted.
The first question on the jury verdict form reads: "Did the plaintiff prove by a preponderance of the evidence that the care or treatment provided by Earl K. Long Regional Medical Center and/or Dr. Louise Collins fell [sic] below the applicable standard of care in the delivery of Jamal Hunter, II?" The jury responded "NO" to this first question and returned the verdict to the trial judge, never reaching the third or fourth questions dealing with the issue of comparative fault of Ericka Hunter.
Further, plaintiffs' expert in this case, Dr. Francois Blaudeau, stated that the standard of care in shoulder dystocia cases is that once the dystocia is diagnosed, no downward traction should be applied. Dr. Blaudeau further opined that in this case, Dr. Collins applied too much downward traction on the fetal head while the shoulder was impacted, which resulted in the injury to Jamal. However, the medical records upon which Dr. Blaudeau relied merely state that downward traction was applied; they do not specify the degree of traction used by Dr. Collins.
Defendants' experts, contrarily, testified that the standard of care was to apply gentle traction after the dystocia was diagnosed in order to try and release the impacted shoulder. Further, Dr. Collins testified that she did not use excessive traction, but rather, that she used gentle traction. The experts agreed that Dr. Collins followed accepted procedures and utilized accepted maneuvers in attempting to resolve the dystocia. Additionally, all experts, including Dr. Blaudeau, agreed that brachial plexus injuries can result from other causes besides using too much traction, including maternal force, and can occur in utero, following a cesarean section, or from other unknown causes. Finally, defense experts stated that even if the doctor does everything right during the delivery, brachial plexus injuries can still occur.
Additionally, in regard to plaintiffs' assertion that there was inadequate supervision of Dr. Collins during Jamal's delivery, *766 the defense experts stated at trial that a second year resident was well-trained and capable of delivering a severe shoulder dystocia. The experts also testified, including Dr. Collins, that it was standard procedure to call an upper level resident or attending physician when a shoulder dystocia was encountered. However, Janet Brignac, a registered nurse, and Dr. Joseph Miller, Professor of Obstetrics and Gynecology at LSU Health Sciences Center in New Orleans, testified that after a call is made, the resident continues to deliver the baby and does not just wait for assistance. There was a discrepancy in the testimony as to how long the delivery could proceed once the dystocia had been diagnosed before the baby went into distress due to a lack of oxygen. However, all experts agreed that a dystocia was an emergency situation that had to be resolved rather quickly. Both Ms. Brignac and Dr. Collins testified that a call was made for assistance in this case; however, Dr. Collins also stated that Jamal was delivered two minutes after the shoulder dystocia was diagnosed.
Clearly, the jury was presented with conflicting expert testimony and made a credibility determination. See Fox v. Fox, 97-1914, p. 2 (La.App. 1st Cir.11/6/98), 727 So.2d 514, 516, writ denied, 99-0265 (La.3/19/99), 740 So.2d 119. From our review of the record, the jury had ample evidence upon which to determine that the plaintiffs failed to prove that EKL and/or Dr. Collins breached the standard of care in the delivery of Jamal, and its verdict is supportable by a fair interpretation of that evidence. As such, we find no error or abuse of discretion in the trial court's denial of plaintiffs' motion for JNOV and motion for new trial.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court, finding in favor of defendants and dismissing plaintiffs' claims with prejudice. All costs of this appeal are to be borne by appellants, Ericka and Jamal Hunter, Sr.
AFFIRMED.