STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-871


SHAWN SHELTON

VERSUS

WAL-MART LOUISIANA, LLC, ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 230,508
HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

REVERSED AND REMANDED WITH INSTRUCTIONS.

R. O'Neal Chadwick, Jr.
Chadwick Law Firm, LLC
Post Office Box 12114
Alexandria, LA 71315
(318) 443-3793
COUNSEL FOR DEFENDANT /APPELLANT:
    Wal-Mart Louisiana, LLC
    Michael Gremillion

Charles D. Elliott
Vilar & Elliott, L.L.C.
Post Office Box 12730
Alexandria, LA 71315-2730
(318) 442-9533
COUNSEL FOR PLAINTIFF/APPELLEE:
    Shawn Shelton

AMY, Judge.

The plaintiff alleges that she injured her post-surgical knee when she fell at the defendant store. She sought damages related to the injury and a subsequent knee surgery. A jury apportioned sixty percent of the fault to the defendant and forty percent to the plaintiff. It awarded only a portion of the damages sought by the plaintiff. Thereafter, the trial court granted a JNOV, increasing the medical expenses and the general damages. The defendant appeals the granting of the JNOV. The plaintiff answers the appeal, seeking an increase in general damages and the imposition of costs and interest. For the following reasons, we vacate the judgment granting the JNOV and reinstate the judgment reflecting the jury verdict. As the record contains an incomplete version of the judgment being reinstated,[1] we remand for supplementation of the appellate record in this regard.

**Factual and Procedural Background**

The plaintiff, Shawn Shelton, visited the Wal-Mart in Pineville on August 4, 2007. In the petition instituting this suit, she alleged that she "was shopping in the dairy section when she slipped and fell on a clear, pink, watery substance." She asserted that there were no wet floor or caution signs marking the area and that the accident occurred because Wal-Mart employees improperly cleaned a spill. Ms. Shelton denied that she could have prevented the fall. She alleged that the fall caused knee injuries, requiring surgery, as well as injury to her back. Ms. Shelton sought medical expenses and general damages. The petition listed Wal-Mart, the Pineville store manager, and one of its employees as defendants.

---

[1] The appellate record includes the completed jury verdict form. However, it contains only the first page of the trial court's judgment entering that verdict and the Notice and Certificate of the Signing of Judgment. The portion of the judgment included in the record at page 125 does not include the entirety of the jury's verdict, information regarding costs and interest, or the trial court's signature. The Notice indicates that the Judgment was signed on February 19, 2009.

In its defense of the case, Wal-Mart pointed out that Ms. Shelton had an extensive medical history, including a prior knee surgery for which she was still under a physician's care at the time of this fall. Furthermore, while it acknowledged a spill in the dairy section of its store, it contended that the spill was marked with a cone at the time it was attended to by its employee immediately prior to the fall.

A jury determined that Ms. Shelton proved that Wal-Mart or its employees were at fault in causing Ms. Shelton's injuries, that Wal-Mart had actual or constructive knowledge of the unreasonably dangerous condition, and that the condition caused/contributed to the accident. The jury also found Ms. Shelton to be at fault in causing the injuries and assessed her with forty percent of the fault. The jury awarded $2,788.84 in past medical expenses and $3,000.00 for past physical pain and suffering.

Thereafter, Ms. Shelton filed a motion for judgment notwithstanding the verdict and alternative motion for additur. Ms. Shelton argued that the jury impermissibly ignored the testimony of one of her orthopedic surgeons, Dr. Michael Brunet. As pointed out by Ms. Shelton, Dr. Brunet testified that the fall at Wal-Mart was most likely the cause of the subsequent knee injury and need for a second surgery. Thus, she asserted that she was entitled to the entirety of her medical expenses claimed rather than the limited portion awarded by the jury and an increase in general damages. Ms. Shelton also contended that the jury erred in assessing her with forty percent of the fault as she testified there was nothing marking the spill. The trial court granted the motion, in part, explaining as follows in reasons for ruling:

> [T]he Court believes that the jury erred in its award of $2,788.84 for Ms. Shelton's medical expenses. The jury did not follow the Court's instructions as to evidence presented at trial, particularly expert testimony and evidence of special damages. A reasonable person could

2

not find that the medical expenses incurred were not a result of the fall at the Wal-Mart store. It was apparent from the documents presented and the testimony of Dr. Brunet that Ms. Shelton sought medical treatment and continued to receive medical treatment as a result of her fall and injury at the Wal-Mart store. Her treatment began shortly after the fall. The testimony of Dr. Brunet was not contradicted nor was there any objection to the admission of the medical bills. The jury should have awarded all of the medical expenses.

Therefore, this Court hereby grants the plaintiff's Motion Notwithstanding the Verdict as to special damages award. This court awards the plaintiff $26,142.47 for her medical expenses.

As to general damages, the jury awarded $3,000 to Ms. Shelton for pain and suffering for the year and a half prior to trial and awarded zero dollars for future physical pain and suffering, past mental pain and suffering, future mental pain and suffering, past loss of enjoyment of life and future loss of enjoyment of life.

This Court believes that the jury erred in its award of $3,000.00 for Ms. Shelton's past pain and suffering. Ms. Shelton has obviously suffered as a result of the knee injury. She has had surgery to the knee and has required continued physical therapy. Therefore, this Court increases the plaintiff's award of $3,000 for past pain and suffering to $75,000.

However, this Court does not believe the jury erred in its award for the general damages of future physical pain and suffering, past mental pain and suffering, etc. Therefore, the Court will not change the jury's award for those damages.

Wal-Mart appeals, questioning "[w]hether there was sufficient evidence presented at trial to support the jury's verdict so that the trial court erred in upsetting that verdict[.]" Ms. Shelton answered the appeal, asserting that the jury wrongly attributed her with forty percent of the fault in causing the accident. She also seeks general damages for future physical pain and suffering as well as past and future mental anguish and loss of enjoyment of life.

**Discussion**

*JNOV*

Wal-Mart contends that the trial court erred in entering the JNOV and that the

record contained a basis for the jury's verdict. In particular, Wal-Mart contends that the trial court's determination was based on impermissible credibility calls and weighing of the evidence.

Louisiana Code of Civil Procedure Article 1811[2] provides for the trial court's use of a JNOV, which "is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict." *Forbes v. Cockerham*, 08-762, p. 30 (La. 1/21/09), 5 So.3d 839, 857. A trial court should enter a JNOV "only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions." *Id.* It is not sufficient that there is a preponderance of evidence for the mover. *Davis v. Wal-Mart Stores, Inc.*, 00-445 (La. 11/28/00), 774 So.2d 84. Rather, "[i]f there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied." *Id.* at 89. In considering this point, the trial court should not evaluate the credibility of the witnesses. *Id.* Finally, the trial court must resolve all reasonable inferences or factual questions in favor of the non-moving party. *Id.*

On review of a JNOV, the appellate court's inquiry is two-part. *Davis*, 774 So.2d 84. First, the appellate court must determine whether the trial court erred in

---

[2] Article 1811 provides, in part:

A. (1) Not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment under Article 1913, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.

granting the JNOV. *Id.* Therefore, the appellate court considers "whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." *Forbes*, 5 So.3d at 858. If the appellate court concludes that reasonable persons might reach a different conclusion, the trial court's granting of the motion was erroneous and the jury verdict should be reinstated. *Id.* However, if the trial court applied the correct standard, the appellate court reviews the JNOV using the manifest error standard of review. *Davis*, 774 So.2d 84.

The evidence in this case indicates that reasonable persons could have found as the jury did in its judgment. The jury awarded $2,788.84 in medical expenses. This figure equals that amount sought for Ms. Shelton's ambulance transport from the scene ($1,136.00), the related emergency room visit ($1,004.84), the emergency room physician's charges ($508.00), and two physical therapy treatments at $70 per treatment. The jury awarded no additional expenses. Thus, it appears that the jury found that Ms. Shelton reasonably sought medical evaluation at that time given the pain experienced in the fall and the fact that she was still under medical care for the knee surgery she had undergone in June 2007, approximately two months prior to the Wal-Mart incident. The record supports a determination that Ms. Shelton failed to prove that the subsequent treatment sought was related to the fall.

In particular, the jury was presented with Ms. Shelton's medical records which evidenced her history of knee complaints. Her June 2007 knee surgery was performed by Dr. Erik Bruce, an orthopedic surgeon. Dr. Bruce continued to treat Ms. Shelton following that surgery, including at the time of and after Ms. Shelton's fall. The office's records indicate that on August 3, 2007, the day before the fall at

5

Wal-Mart, Ms. Shelton reported to Dr. Bruce for an office visit. The notes from that visit reflect that:

> Patient is a 47 year old female status post left VMO advancement. Wednesday afternoon her car stalled and she was pushing her car and felt a pop in her left leg. Since that time she has had pain in the left leg. She has 7 out of 10 pain.

Dr. Bruce aspirated both of Ms. Shelton's knees, gave her an injection, and prescribed continued physical therapy. Dr. Bruce instructed Ms. Shelton to return to the clinic in six to eight weeks.

It was the day following this incident in which she reported pushing her car, feeling a "pop" in her left leg, and experiencing increased pain, that she fell in Wal-Mart. Although Ms. Shelton explained at trial that the incident involving the car was inaccurately recorded and that she did not push the car, but instead struck her knee on the steering wheel, the jury could have placed little weight on Ms. Shelton's testimony in light of the medical notation. This type of credibility assessment is within the province of the trier of fact and is inappropriate in a trial court's review of a motion for JNOV. *Joseph v. Broussard Rice Mill, Inc.*, 00-628 (La. 10/30/00), 772 So.2d 94.

Two days after the fall at Wal-Mart, Ms. Shelton returned to the orthopedic surgeon's office where she reported the fall and that "she sustained a hyperflexion type injury to her knee and landed directly on her patella." Yet, the examination revealed: "No effusion. 0-90 degrees range of motion. Little tender about patella. No prepateller swelling. As far as I can tell, she can do a good straight leg raise. Her VMO advancement appears intact." The report indicates that the x-rays taken at the emergency room after the fall did not evidence a fracture. At her subsequent visit on August 22, 2007, Dr. Bruce recorded that Ms. Shelton was "very scared and

6

apprehensive" after the Wal-Mart fall and that she reported pain as 9 out of 10. However, his examination revealed that her left knee had "full range of motion. Patient is neurovascularly intact distally. She has a stable patella and no effusion." In the subsequent months, Ms. Shelton returned to the office with continued complaints of pain.

Eventually, Dr. Brunet became Ms. Shelton's treating orthopedic surgeon. In addition to Dr. Bruce's relocation to another state, Ms. Shelton explained that she became dissatisfied with Dr. Bruce's care after her fall at Wal-Mart because he felt that her first knee surgery had proven a success. Thereafter, Dr. Brunet began treating Ms. Shelton. While he testified at trial that he felt that the Wal-Mart fall was most likely the cause of the need for Ms. Shelton's second knee surgery, the entirety of his statement was as follows:

> It - - it's the only thing, historically, that - - that I was able to determine from talking with - - with Ms. Shelton, that as a reasonable source of - - of the patella not necessarily dislocation, but enough to have stretched out some of the reconstruction where she was continuing to be symptomatic.

Accordingly, the jury could have permissibly rejected Dr. Brunet's theory of causation as it was based on a history as reported by Ms. Shelton. While Ms. Shelton argued both in support of her motion on JNOV and again in her brief on appeal that the jury could not have disregarded Dr. Brunet's testimony because it was uncontradicted, this is incorrect. Just as with lay witnesses, a factfinder can reject expert testimony in part or in full. *Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So.2d 838.

Construed in favor of the nonmoving party, the jury was presented only with a plaintiff who had a history of a variety of health complaints, including treatment for

pain in both knees, who personally attributed her escalating knee complaints to her fall at Wal-Mart. As Dr. Brunet's history was dependant on Ms. Shelton's own history of the fall, the jury clearly could have determined that his statement regarding causation was insufficient for Ms. Shelton to carry her burden of proof as to causation of all of her claimed damages.

Accordingly, as the record supports the jury's determination as to the damages awarded, we reverse the judgment granting the JNOV and reinstate the jury's verdict.

*Allocation of Fault*

In her answer to the appeal, Ms. Shelton contests the jury's determination that she was forty percent at fault in causing the accident resulting in her injuries. She asserts that the jury should have accepted her testimony that the spill was not marked in any way.

Issues of causation and apportionment of fault are factual in nature. *Smith v. Alexandria Coca Cola Bottling Co.*, 05-686 (La.App. 3 Cir. 12/30/05), 918 So.2d 522. A factfinder's determination as to these issues will not be overturned absent manifest error. In this case, the jury reasonably determined that conditions were such that Ms. Shelton either saw or should have seen the condition of the floor at the accident scene, thus failing to exercise reasonable care as a patron. It is not disputed that the floor was still wet and that Wal-Mart was responsible for that condition under the facts as presented. Yet, Michael Gremillion, the Co-Manager at Wal-Mart at the time of the accident, testified that when he arrived at the scene, Ms. Shelton was lying on a wet floor sign. Similarly, Robert Sluss, Assistant Manager at the store, also testified that a wet floor sign was underneath Ms. Shelton when he responded to the scene.

8

Although Ms. Shelton testified that there were no signs in the area, the jury could have rejected this in finding that at least one sign was in place and should have alerted Ms. Shelton to the floor's condition if she had exercised reasonable caution. Accordingly, the jury's determination as to Ms. Shelton's fault and its apportionment of fault are not manifestly erroneous.

*Damages*

As pointed out by Ms. Shelton the jury only awarded general damages for past physical pain and suffering. It awarded zero dollars for future physical pain and suffering, past and future mental anguish, and past and future loss of enjoyment of life. She contends that no reasonable fact finder could have denied damages for these elements.

As explained above, the jury's award of medical expenses seemingly demonstrates that it found the fall at issue only caused the expenses of the ambulance transport from the scene, the emergency room visit, and the physical therapy sessions completed within two weeks of the fall. The jury obviously found that the consequences of Ms. Shelton's fall were limited and that her other claimed damages were caused by other events or conditions. In light of this circumstance, we find no abuse of discretion in the jury's award of $3,000 for past physical pain and suffering in general damages. *See* La.Civ.Code art. 2324.1. Accordingly, we do not disturb the general damages award on review.

*Costs and Interests*

In her answer, Ms. Shelton seeks the imposition of costs and interest in the judgment in the event that this court affirmed the judgment granting the JNOV. In

9

light of the determination that the JNOV was erroneously entered, this decision is rendered moot.

**DECREE**

For the foregoing reasons, the May 5, 2009 judgment granting the motion for judgment notwithstanding the verdict is reversed. The trial court's judgment of February 19, 2009 is reinstated. This matter is remanded with orders to the trial court to file a copy of the judgment reflecting the jury's verdict in its entirety into the appellate record. Costs of this proceeding are assessed to the plaintiff/appellee, Shawn Shelton.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**