# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 06-1023

CAREY DAVIS

VERSUS

HARRAH'S LAKE CHARLES, L.L.C.,
AKA PLAYERS LAKE CHARLES, L.L.C., ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2002-2818
HONORABLE DAVID RITCHIE, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.

AFFIRMED.

Cooks, J., concurs in the result only.

Robert J. Williams
Robert J. Williams, LLC
4830 Lake Street
Lake Charles, Louisiana 70605
(337) 562-1116
COUNSEL FOR PLAINTIFF/APPELLANT:
    Carey Davis

Michael J. McNulty, III
Post Office Drawer 1705
Lake Charles, Louisiana 70602
(337) 436-0522
COUNSEL FOR DEFENDANT/APPELLEE:
    Harrah's Lake Charles, L.L.C.

**GENOVESE, Judge.**

In this slip and fall case on outside stairs of a casino boat, Plaintiff, Carey Davis (Davis), appeals the jury verdict in favor of Defendant boatowner, Harrah's Lake Charles, L.L.C. (Harrah's), finding that the stairwell did not present an unreasonable risk of harm. Davis also appeals the denial of his motion for judgment notwithstanding the verdict (JNOV) and/or motion for new trial. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Davis testified that on the evening of Saturday, June 9, 2001, just before midnight, he received a telephone call from his mother informing him that she, his sister, and his aunts were going out to eat and wanted him to meet them at the casino. It had rained that evening. Davis stated that he assumed they were at Harrah's, so he went there to meet them. Davis further testified that when he arrived at Harrah's, he decided to call his friend, who worked at Harrah's, to ask whether she had seen his family members in the casino's buffet area. However, when he tried to make the cellular telephone call, he could not receive a cellular signal. He then decided to go onto the boat. Instead of going into the casino, he stated that he walked outside to the bow, or front of the boat, in an effort to get a cellular signal. Davis testified that he then walked up two flights of stairs and was finally able to call his friend upon reaching the second level. After successfully completing his cellular telephone call, Davis testified that he attempted to enter the casino through the doors located on the second floor, but that the doors would not open. Davis stated that he then proceeded to descend the same stairs that he had earlier ascended. Davis testified that he slipped and fell down to the first landing, which separated two fights of stairs, and that he did

not hurt himself as a result of this fall. Davis further testified that he got up and looked to see if he slipped on something; however, aside from the stairs being wet because it had rained earlier that day, he saw nothing. With cellular telephone in hand, Davis stated that he then grabbed the handrail and proceeded to descend the final level of stairs. Davis testified that he slipped and fell a second time, this time losing his cellular telephone and landing at the bottom of the stairs on the ground level at the bow of the boat. Davis further testified that two people, the captain and a deckhand, witnessed his second fall. Davis stated that because he did not notice any broken bones, he refused medical treatment and, after an accident report was prepared, he went home without ever finding his mother and other relatives. Davis also testified that the following morning he began experiencing pain in his neck and back which prompted him to seek treatment at St. Patrick Hospital's emergency room in Lake Charles, Louisiana.

On June 7, 2002, Davis filed suit against Harrah's, alleging that he suffered injuries on June 9, 2001 while descending stairs aboard Harrah's river boat casino, *Star*, in Lake Charles, Louisiana. In his petition, Davis alleges, in pertinent part, that "[he] was a patron aboard the vessel *Star*, owned and operated by [D]efendants herein, when suddenly and without warning, he slipped and fell down a flight(s) of stairs (due to the slippery condition of said stairs) causing injuries and damages." Davis further alleges that he slipped and fell twice while descending the stairs. Additionally, Davis alleges that the accident was due to the negligence and/or strict liability of Harrah's in "leaving or allowing said stairs to remain in a slippery condition and not taking precautions to safeguard patrons in the area. . . ."

A jury trial was held from November 29 through December 2, 2005. At the

2

conclusion of the trial, the jury returned a verdict in favor of Harrah's finding that the stairs in question did not present an unreasonable risk of harm to its patrons. A judgment pursuant to the jury verdict was signed on January 5, 2006. On March 3, 2006, the trial court denied Davis's motion for JNOV and, in the alternative, motion for new trial. Davis appeals.

## ASSIGNMENTS OF ERROR

In his two assignments of error, Davis asserts that the trial court erred in denying his motion for JNOV, or alternatively, in denying his motion for a new trial.

## LAW AND DISCUSSION

Louisiana Civil Code Article 2317 provides in part: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody. This however, is to be understood with the following modifications." Louisiana Civil Code Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

To recover for damages under the provisions of La.Civ.Code art. 2317.1, a plaintiff must prove "(1) the thing was in the defendant's custody and control; (2) *the thing contained a defect which presented an unreasonable risk of harm to others*; and (3) the defendant knew or should have known of the defect." *Roberson v. Lafayette Oilman's Sporting Clays Shoot, Inc.*, 05-1285, p. 5 (La.App. 3 Cir. 4/12/06), 928 So.2d 703, 705-06, *writ denied*, 06-1120 (La. 9/1/06), 936 So.2d 206 (emphasis added).

3

***Judgment Notwithstanding the Verdict (JNOV)***

Louisiana Code of Civil Procedure Article 1811[1] provides for the use of a motion for JNOV. The criteria applicable to our review of the denial of Davis's motion for JNOV was set forth by the Louisiana Supreme Court in *Peterson v. Gibraltar Sav. and Loan*, 98-1601, pp. 5-6 (La. 1999), 733 So.2d 1198, 1203:

> JNOV is warranted only when the facts and inferences, viewed in the light most favorable to the party opposing the motion, is so strongly

---

[1]Louisiana Code of Civil Procedure Article 1811 provides:

A. (1) Not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment under Article 1913, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.

(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.

B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.

C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.

(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.

(3) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.

D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of the signing of the judgment notwithstanding the verdict under Article 1913. The motion shall be served pursuant to Articles 1976 and 1314.

E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted.

F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.

and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict; the motion should be granted only when evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. *Anderson v. New Orleans Public Service, Inc.,* 583 So.2d. 829 (La.1991); *Scott v. Hospital Service District No. 1*, 496 So.2d 270 (La.1986). Refusal to render a judgment notwithstanding the verdict (JNOV) can only be overturned if it is manifestly erroneous. *Delaney v. Whitney National Bank*, 96-2144, 97-254 (La.App. 4 Cir. 11/12/97), 703 So.2d 709[,] *writ denied*, 98-213 (La. 3/20/98), 715 So.2d 1211.

Therefore, the standard governing our review of the trial court's denial of Davis's motion for JNOV is that of manifest error. *Id.*

Whether Harrah's exposed its patrons to an unreasonable risk of injury or harm is a question of law to which the jury answered "no." Davis filed a motion for JNOV claiming that the jury's decision was against the law and the evidence. Davis contends that the jury erred by failing to find that the stairs in question presented an unreasonable risk of harm. Davis further contends that the trial court erred in refusing to grant his motions for JNOV, or in the alternative, a new trial.

After a thorough review of the record, we find that the trial court did not err in denying the motion for JNOV. The jury's verdict was reasonable in light of the evidence presented at trial. We find that the record contains sufficient evidence to support the jury's verdict and the trial court's denial of Davis's motion for JNOV.

Davis contends that the testimony of his expert, Jason English (English), was uncontradicted and, if accepted as true, reasonable minds could not differ in reaching the conclusion that Harrah's was negligent. English was accepted by the court as an expert in the area of safety engineering. In summary, English opined that the stairs at issue were unreasonably dangerous due to their short and inconsistent tread depths. English testified that the stairs at issue were not in compliance with standards for

5

vessels set forth by the United States Coast Guard (Coast Guard) because the tread depths for the stairs in question were shorter than those required; thus, a person traversing those stairs would be exposed to an unreasonable risk of harm. Davis also contends that English's testimony was uncontradicted since Harrah's expert, Eric Houin (Houin), simply offered his opinion that the stairs were not against the Coast Guard's accepted standards and Houin failed to offer any supportive documentation.

Houin, Harrah's expert, was accepted by the court as an expert in the field of ship design, ladder safety, and naval engineering. Houin testified that prior to a vessel being allowed to set sail, stairwell plans must be provided to the Coast Guard for approval. Houin testified that the stairs in question were accepted and/or approved by the Coast Guard upon its inspection and approval of the initial plans for the vessel. Hence, Houin contends that English's opinion that the stairs were not in compliance with coast guard regulations was wrong. Houin testified that the stairs incorporated non-skid Wooster steps which contain an abrasive surface. Houin testified that the stairs contained handrails which assist in balance, provide support, and serve to prevent injury. Houin opined that the stairwells, or the incline ladders when referring to vessels, meet Coast Guard regulations because the Coast Guard approved the stairs when the vessel's plan were initially presented to the Coast Guard prior to the vessel's commencement of operations. Houin opined that Davis's fall occurred simply because of Davis's failure to use ordinary care while descending the stairs. Thus, the experts have rendered conflicting testimony and opinions.

Harrah's presented the testimony of Captain Danny Jones (Captain Jones). Captain Jones testified at trial that he worked for Harrah's for eight years during which time the Coast Guard had never cited Harrah's for a safety violation with

6

respect to the stairs in question. Further, Captain Jones testified that there were no other accidents on the stairs.

Harrah's presented the testimony of Chief Engineer Roy Ellison (Ellison). Ellison testified at trial that he worked for Harrah's for six years, and he was near the stairs in question when Davis landed at the bottom of the stairs on the ground level at the bow of the boat. He stated that he first heard Davis's cellular telephone hit the deck, or ground, before he saw Davis laying on the ground at the bottom of the stairs. Ellison further testified that he personally traversed the stairs ten or twelve times a week and never encountered a problem.

Finally, Harrah's deckhand, Mac Lestrappes (Lestrappes), testified at trial that he worked for Harrah's for nine years. Lestrappes testified that one of his responsibilities as a deckhand was to paint the stairs aboard the boat and cover the wet paint with sand to ensure that the stairs were not slippery.

In ruling on Davis's motion for JNOV, the trial court was required to determine whether the evidence viewed in the light most favorable to Harrah's pointed so strongly and overwhelmingly in favor of Davis that reasonable persons could not arrive at a contrary verdict on the issue of whether Harrah's engaged in negligent conduct, and whether the stairs at issue were an unreasonably dangerous condition or created an unreasonable risk of harm. The trial court, in its oral reasons for denying Davis's motion for JNOV, stated that "if there's any evidence at all that the jury could have used to make their decision, then I can't -- you know, I can't undo what they've done, or I can't substitute my judgment for theirs. And I think that's where I am at this point." We agree. Given the testimony and other evidence presented herein, there was a reasonable basis for the jury's finding, and we are not

7

convinced that reasonable persons could not arrive at any verdict other than one in favor of Davis. We further recognize that the trier of fact is in the best position to assess the demeanor and judge the credibility of witnesses when there is conflicting testimony. *Robin v. Allstate Ins. Co.*, 03-1009, 03-926 (La.App. 3 Cir. 3/24/04), 870 So.2d 402, *writ denied*, 04-1383 (La. 9/24/04), 882 So.2d 1143 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)). Thus, we find that the trial court's denial of Davis's motion for JNOV was not manifestly erroneous.

***Motion for New Trial***

Louisiana Code of Civil Procedure Article 1972(1) provides, in pertinent part, that "[a] new trial shall be granted, upon contradictory motion of any party . . . [w]hen the verdict or judgment appears clearly contrary to the law and the evidence." This court stated in *Williams v. W.O. Moss Regional Medical Center*, 05-022, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1150, 1153-54:

> The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion." *Martin* [*v. Heritage Manor South Nursing Home*, 00-1023 (La. 4/3/01)], 784 So.2d 627. In order to apply this standard, "[w]e are faced with the balancing of two very important concepts: the great deference given to the jury in its fact finding role and the great discretion given to the trial court in deciding whether to grant a new trial." *Davis v. Wal-Mart Stores, Inc.*, 00-445, pp. 11-12 (La.11/28/00), 774 So.2d 84, 93-94. Though the "[trial] court has much discretion [in determining whether to grant a new trial] . . . ., this court will not hesitate to set aside the ruling of the trial judge in a case of manifest abuse." *Lamb v. Lamb*, 430 So.2d 51, 53 (La.1983). Thus, although "[t]he scales are clearly tilted in favor of the survival of the jury's verdict, the trial court is left with a breadth of discretion which varies with the facts and events of each case." *Davis*, 774 So.2d at 94.
>
> The Louisiana Supreme Court stated in *Martin*, 784 So.2d at 637, "[A] jury verdict cannot be set aside on that [sic] the grounds that the verdict is contrary to the evidence if it is supportable by any fair interpretation of the evidence." This is a case in which there was a dispute among the experts as to whether the defendants breached the applicable standard of care. "It is the duty of the jury to evaluate the credibility of each witness, and come to conclusions as to the facts based

on these evaluations." *Campbell v. Tork, Inc.*, 03-1341, p. 11 (La.2/20/04), 870 So.2d 968, 975.

Our review of the record supports the jury's determination that the stairs did not present an unreasonable risk of harm. While a trial court does have discretion in granting a new trial, and is entitled to draw its own inferences and conclusions from the evidence as well as evaluate the credibility of the witnesses, the trial court may not interfere with a jury verdict with which it simply disagrees when that verdict is based on a fair interpretation of the evidence. *Williams*, 903 So.2d 1150. In this case, the jury heard substantial testimony to lead it to conclude that the stairs in question did not present an unreasonable risk of harm. We find the jury's verdict is clearly supportable by a fair interpretation of the evidence; therefore, we find no abuse of discretion in the trial court's denial of Davis's motion for a new trial.

## DECREE

The judgment of the trial court denying Davis's motion for JNOV and/or motion for new trial is affirmed. Costs of this appeal are assessed against Plaintiff/Appellant, Carey Davis.

**AFFIRMED.**